

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONNIESA WILSON, et al | * | CIVIL ACTION |
| | * | NUMBER: 02-2244 |
| VERSUS | * | SECTION: J |
| SHERIFF CHARLES C. FOTI, ET AL | * | JUDGE: CARL J. BARBIER |
| | * | MAG. 1: SALLY SHUSHAN |

**MOTION TO COMPEL DISCOVERY AND MEMORANDUM IN SUPPORT THEREOF**

NOW INTO COURT through undersigned counsel come the plaintiffs who move to compel Dr. Richard Inglese to provide deposition testimony and documents regarding mortality reviews and reports of other deaths, other than Shawn Duncan, which have occurred to prisoners in the custody of the Orleans Parish Criminal Sheriff's Office, (OPCSO), during his tenure as Medical Director, from November 2000 to the present. This information is relevant and discoverable regarding a custom, pattern or practice of deliberate indifference to serious medical needs of prisoners in the custody of the OPCSO. It also may provide evidence as to the subjective intent of Dr. Inglese. Defendant Inglese has refused to answer questions regarding these documents on the basis of peer privilege.

1

A copy of the portion of the deposition which Dr. Inglese has refused to answer questions regarding this issue, is attached. [1]

While Defendant Dr. Inglese, at his deposition, raised "peer privilege"[2] the privilege should more aptly be entitled "self-critical analysis privilege". The documents and information plaintiffs seek are relevant specifically to the question of whether the defendants have ever conducted a good faith investigation of incidents in which prisoners died while in the custody of the Orleans Parish Criminal Sheriff's Office or whether they have covered up alleged violations of civil rights of prisoners in other incidents, as well as the case at bar. This information may also be relevant to issues of training, supervision and discipline. Evidence on this issue also goes to the issue of subjective intent for proving deliberate indifference to a serious medical need.

The invocation of this privilege by defendant Inglese is misplaced in these proceedings. "Neither Louisiana Courts nor the Fifth Circuit have embraced a self-critical analysis privilege". See Hawthorn Land v. Occidental Chemical Corp, 2003 WL 21510426 (June 24, 2003 E.D. LA). See also In Re: Kaiser Aluminum and Chemical Company; 214 F.3d 586 (5th Cir. 2000). Sabatier v. Barnes, 2001 WL 175234 (E.D. LA 2001).

---

[1] While discovery in this federal civil rights case is being conducted along with discovery for a pending state court lawsuit and two medical malpractice petitions, plaintiffs move herein for production of the information sought pursuant to the federal civil rights case.

[2] To the extent that defendants characterize the privilege as a "peer review privilege", that privilege is not recognized in federal courts with jurisdiction based on a federal question. See Robertson v. The Neuro Medical Center, 169 FRD 80 (M.D., LA 1996); Sabatier v. Barnes, 2000 WL 1473597 (E.D. LA 2000).

2

The burden of proof on plaintiffs in this federal civil rights claim for deliberate indifference to a serious medical need for a prisoner in custody of the Orleans Parish Criminal Sheriff's Office, is a heavy one. Plaintiffs have alleged that Shawn Duncan's death was not simply a matter of a single egregious act, but a result of and a reflection of a pattern, practice or custom of deliberate indifference among high ranking, policy making figures who had authority over the hiring, training, supervision and discipline of staff under their direct control, as well as the drafting and implementation of policies and procedures. Circumstances surrounding the deaths of other prisoners whose medical treatment was under the supervision and control of these defendants, is relevant and the request for information regarding these deaths is reasonably calculated to lead to the discovery of admissible evidence. There is no valid privilege to refuse to provide this information.

WHEREFORE, it is respectfully requested that this Motion be granted and that the defendant Dr. Richard Inglese be ordered to produce the mortality reviews and reports of those persons who have died while in custody of the Orleans Parish Criminal Sheriffs' Office from the time he became Medical Director until the present and to answer questions at depositions regarding same.

Respectfully submitted,

_____
MARY E. HOWELL, #7030
Attorney at Law
316 S. Dorgenois Street
New Orleans, LA 70119
(504) 822-4455
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon counsel for all parties by placing same in the U.S. Mails, properly addressed and postage prepaid on this 16th day of Oct, 2003.

_____
MARY E. HOWELL

## LOCAL RULE 37 CERTIFICATE

I hereby certify that on October 9, 2003, I scheduled a telephone conference with attorney Greg Weiss, counsel for Dr. Richard Inglese, to attempt to resolve this matter amicably. Mr. Weiss was not available to discuss this matter. On prior discussions with Mr. Weiss, he has been very direct in asserting the privilege and insisting that this was an issue that the Court must decide.

_____
MARY E. HOWELL

SDuncan: MtCompel.DrInglese

4

BY MS. HOWELL:

Q. Okay, and the answer is no.

How many mortality reviews have you conducted since the time you've been Medical Director at the jail?

A. Roughly 12.

Q. Have you ever had a person from security be one of the people participating on the committee with the mortality review committee?

A. Not on the mortality review committee, but we have a quarterly administrative meeting where we present all findings from significant administrative events which would include significant findings for mortality reviews, and the heads of all security are there as well.

Q. Are there minutes made of those minutes?

A. Yes, there are.

Q. And, who keeps those minutes?

A. Maryann Benitez is Medical Administration.

Q. And, what are those meeting called, quarterly meetings?

A. They're call administrative meetings.

Q. And of those 12 mortality reviews which you've done during the time that you've been there, have you ever found that there was a breakdown in medical or security practices that negatively impacted the

patient care or the outcome?

MR. WIESS:

Object to the form of the question.

THE WITNESS:

I'm also going to ask that these are -- these are mortality reviews that are QI documents, and --

MR. WEISS:

Huh-huh.

THE WITNESS:

-- and I don't think that I have to release that information.

MR. WEISS:

Let me ask you this. Are you asking him for QI information, counsel?

MS. HOWELL:

No, not right now. I'm asking him has he ever reported or found that there was a breakdown in medical or security practices that negatively impacted patient care outcome in any of these mortalities that you've looked at --

THE WITNESS:

She's asking me --

MS. HOWELL:

-- during the time you've been there.

THE WITNESS:

-- to disclose the results.

MR. WEISS:

Yes, I agree with that. I agree with that.

THE WITNESS:

I can answer?

MR. WEISS:

No, no. I'll ask him not to -- instruct him not to answer the question.

BY MS. HOWELL:

Q. Okay, doctor, I want to ask you a few questions for that, because we'll probably have to take this up.

MR. WEISS:

Okay.

BY MS. HOWELL:

Q. These meetings that you had with Maryann Benitez, is she a physician?

A. No. I'm sorry. She's our Director of Operations.

Q. Okay, and who else attends that meeting?

A. The wardens from each of -- each of the buildings --

Q. Are they physicians?

A. -- the Chiefs of the departments.

A. No. Those are the security people.

Q. Okay, so these meetings where you discuss these

mortality reviews, there -- in addition to people from the Medical Department, there's people from administration and people from security? Is that correct?

A. Right.

Q. All right.

A. It's administration, nursing --

Q. All right.

A -- medical, infection control, quality improvement, the wardens.

Q. All right, and a number of people are not medical personnel --

A. Correct.

Q. -- correct?

    MS. HOWELL:

    Are you going to maintain the objection?

    MR. WEISS:

    Absolutely. They don't have to be.

    MS. HOWELL:

    Pardon.

    MR. WEISS:

    They don't have to be under the statute.

    MS. HOWELL:

    All right.

    MR. WIESS:

Whatever it is, 13 colon something.

BY MS. HOWELL:

Q.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONNIESA WILSON, et al | * | CIVIL ACTION |
| | * | NUMBER: 02-2244 |
| VERSUS | * | SECTION: J |
| SHERIFF CHARLES C. FOTI, ET AL | * | JUDGE: CARL J. BARBIER |
| | * | MAG. 1: SALLY SHUSHAN |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**NOTICE OF HEARING ON MOTION TO COMPEL DISCOVERY AND MEMORANDUM IN SUPPORT THEREOF**

PLEASE TAKE NOTICE, that the undersigned will bring the plaintiffs' Motion to Compel Discovery and Memorandum in Support Thereof for hearing before Magistrate Sally Shushan, of the United States District Court, Eastern District of Louisiana on the 3rd day of December, 2003, at 9:00 o'clock A.M.

Respectfully Submitted,

_____
MARY E. HOWELL (#7030)
316 S. Dorgenois Street
New Orleans, LA 70119
(504) 822-4455
Attorney for Plaintiffs

1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon counsel for all parties by placing same in the U.S. Mails, properly addressed and postage prepaid on this 16th day of Oct, 2003.

_____
MARY E. HOWELL

SDuncan: NotHear.MtCompel